**MEDSPAN SHIPPING SERVICE, LTD.**

**v.**

**PRUDENTIAL LINES, INC.**

**Civ. A. No. 81–2463.**

United States District Court,
E. D. Pennsylvania.

May 10, 1982.

Robert A. Swift, Kohn, Savett, Marion & Graf, P. C., Philadelphia, Pa., for plaintiff.

Robert S. Forster, Jr., Krusen, Evans & Byrne, Philadelphia, Pa., for defendant.

SUR PLEADINGS AND PROOF

LUONGO, Chief Judge.

Plaintiff, Medspan Shipping Services, Ltd. (Medspan), instituted this suit to enforce rights accruing to it upon alleged termination of an agreement with defendant, Prudential Lines, Inc. (Prudential), for the lease of a crane. The asserted termination was based upon Prudential's failure to make timely payments of rent. Medspan seeks to recover the balance of rental payments under the lease as well as the return of the crane which is currently located in Egypt.

In lieu of a trial the parties have submitted the case to me on stipulated facts.[1] From the stipulated facts, the pleadings

---

1. Initially, the parties filed cross-motions for summary judgment. In an in-chambers conference, the parties agreed to submit the matter as a non-jury trial on stipulated facts.

and exhibits thereto, and written submissions of the parties, I make the following

## I. FINDINGS OF FACT[2]

1. Plaintiff Medspan Shipping Services, Ltd. is a corporation organized and existing under the laws of Bermuda with its registered office at Bank of Bermuda Building, Hamilton 5, Bermuda. (Stipulation of Facts, Document No. 20, ¶ 1).

2. Defendant Prudential Lines, Inc. is a corporation organized and existing under the laws of Delaware with its principal place of business at 1 World Trade Center, New York, New York 10048. (*Id.* ¶ 2).

3. On April 10, 1980, Medspan and Prudential entered into an Equipment Lease Agreement whereby Medspan agreed to lease to Prudential a Model 7700 Clark Lima Div. 300 ton crane for a period of 20 years in consideration, *inter alia,* of the payment to Medspan of $1,600 per month due the tenth of each month. A copy of the Equipment Lease Agreement is attached as Exhibit "A" to the Amended Complaint. (*Id.* ¶ 3).[3]

4. The Equipment Lease Agreement was executed as a condition of the settlement of another civil action. (*Id.* ¶ 4).

5. From the inception of the Lease and continuing through the present, the crane has been located and used by Prudential in Egypt. (*Id.* ¶ 5).

6. The following is a list through September 1, 1981 of payment due dates under the Lease and the date of checks issued by Prudential in payment thereof. No check was tendered to Medspan prior to the date on the check.

| Payment Due Date | Check Date |
| --- | --- |
| 5/10/80 | 5/01/80 |
| 5/10/80 | 10/08/80 |
| 6/10/80 | 10/03/80 |
| 7/10/80 | 10/02/80 |
| 8/10/80 | 10/02/80 |
| 9/10/80 | 10/02/80 |
| 10/10/80 | 10/08/80 |
| 11/10/80 | 11/25/81 |
| 12/10/80 | 1/13/81 |
| 1/10/81 | 11/25/81 |
| 2/10/81 | 7/08/81 |
| 3/10/81 | 7/08/81 |
| 4/10/81 | 7/08/81 |
| 5/10/81 | 7/28/81 |
| 6/10/81 | 7/28/81 |
| 7/10/81 | 8/07/81 |
| 8/10/81 | 8/07/81 |
| 9/10/81 | 9/01/81 |

(*Id.* ¶ 6).

7. Medspan filed the original complaint in this proceeding on June 18, 1981. Prudential accepted service of the complaint on June 22, 1981. (*Id.* ¶ 7).

8. The original complaint solely sought payment of accrued rent and interest which at that time was undisputedly due and owing. (Document No. 1—Prayer for Relief; *see also* Finding No. 6 *supra* ).

9. On July 20, 1981, Prudential received Medspan's letter dated July 16, 1981, a copy of which is attached as Exhibit "B" to the amended complaint. (Stipulated Facts, Document No. 20, ¶ 8). [The letter is set forth in full in Finding No. 10 *infra.*]

10. The July 16, 1981 letter provides:

Prudential Lines, Inc.

One World Trade Center

Suite 3601

New York, N.J. 10048

Gentlemen:

Notice is hereby given of termination of the equipment lease agreement dated as of April 10, 1980 between Prudential Lines, Inc. and Medspan Shipping Services, Ltd. covering a model 7700 Clark-Lima Div. 300-ton crane as a result of defaults by Prudential Lines, Inc.

You are instructed to deliver possession of the crane to Medspan in accordance

---

2. The stipulated facts are contained in two separate documents. (*See* Documents Nos. 20 and 21). As submitted, the stipulated facts are sparse and standing alone, are difficult to understand. Accordingly, in order to clarify the factual context, I have set forth some additional findings which amplify the parties' stipulated facts. Where the facts are taken directly from the stipulations it will be so noted.

3. The provision of the thirteen-page case relevant to this action is set forth in note 6 *infra.*

with the provisions of the lease. You remain liable as provided in the lease for rental thereunder.

Very truly yours,

Leonard Barkan

(Amended Complaint, Exhibit B, Document No. 4).

11. Medspan filed its amended complaint on July 24, 1981. (Stipulation of Facts, Document No. 20, ¶ 9).

12. As of the date hereof [April 5, 1982], Prudential has paid Medspan all past principal rental payments due under the Lease as well as the payment due April 10, 1982. (Supplemental Stipulation of Facts, Document No. 21, ¶ 1).

13. The "present value of future rental," as that term is used in paragraph 10(b) of the Lease, is $119,252.52 for the period March 11 through April 10, 1982. (*Id.* ¶ 2).

14. The "present value of future rental," as that term is used in paragraph 10(b) of the Lease is $119,143.17 for the period April 11, 1982 through May 10, 1982. (*Id.* ¶ 3).[4]

15. Plaintiff reserves the right to apply for an attorney's fee and reimbursement of

costs at the conclusion of this proceeding pursuant to paragraph 16(b) of the Lease. (*Id.* ¶ 4).

16. Prudential Lines reserves its right to contest both Medspan's entitlement to attorney's fees and the amount thereof. (*Id.* ¶ 5).

17. Other than as set forth in the Stipulation of Facts and Supplemental Stipulation of Facts, counsel for the parties would not present any additional evidence at the trial of this matter, and hereby consent to trial on the facts stipulated. (*Id.* ¶ 6).

## II. DISCUSSION

The principal issue relating to liability in this action is whether Medspan effectively terminated the contract on July 16, 1981 for Prudential's failure to timely pay rent.[5] It is Prudential's position that Medspan failed to strictly perform conditions precedent to termination and that the contract is still in effect between the parties.

Paragraph 16 of the lease gives Medspan the right to terminate the lease on written notice to Prudential if an "event of default" occurred.[6] One such event is

4. The parties submitted their supplemental stipulated facts on April 5, 1982. Because they could not be certain that this case would be decided prior to April 10, 1982, and that the present value of rental payments contained in Finding No. 13 would apply, they set forth in Finding No. 14 the present value of rental payments to be applied if a decision was rendered in Medspan's favor during the period April 11 to May 10, 1982. Accordingly, as of the date of this opinion the present value of future rental is that set forth in Finding No. 14, $119,143.17.

5. In its motion for summary judgment Medspan asserted as an additional ground for termination Prudential's failure to comply with certain insurance covenants in the lease. This basis for termination had not previously been raised in any other pleading. The stipulated facts submitted by the parties did not state any fact bearing on the insurance issue. Accordingly, in light of the stipulation that the only evidence to be considered is that contained in the stipulated facts, counsel for Prudential argued that Medspan no longer sought relief on the basis of Prudential's breach of the insurance covenant. Despite the fact that counsel for Medspan did not dispute this contention in writing, I felt it proper to inquire whether it was his intention to drop the insurance default

as a basis for relief. On April 26, 1982, in a telephone conference call between myself and counsel for both parties, counsel for Medspan informed me that he was not pressing the insurance issue as a ground for terminating the lease.

6. Paragraph 16 provides, in pertinent part:

16. *Default.*

(a) If one or more of the following events of default (an "Event of Default") shall occur and shall be continuing:

(i) default in the payment when due of any installment of rent payable to Medspan hereunder, where such default shall continue for 10 days after written notice thereof from Medspan to PLI;

. . . .

then, in any such event, Medspan may terminate this agreement, by notice in writing to PLI, whereupon all right of PLI to the use of the Equipment shall absolutely cease and terminate, but PLI shall remain liable as hereinafter provided; and thereupon Medspan may (i) instruct PLI to deliver possession to Medspan in accordance with paragraph 11 hereof, or (ii) enter upon and take possession of such Equipment, wherever found, without

default in the payment when due of any installment of rent payable to Medspan hereunder, where such default shall continue for 10 days after written notice thereof from Medspan to PLI; . . . .

(Lease ¶ 16(a)(i)). As the schedule of rental payments set forth in the findings makes clear, there is no question that Prudential was behind in its obligation to pay rent when Medspan notified it by letter on July 16, 1981 that the agreement was terminated. Prudential argues, however, that the July 16, 1981 letter was ineffectual because Medspan had not given Prudential written notice of default as required by the clause set forth above. Medspan's answer is that its initial complaint in this action, filed June 18, 1981, alleging that Prudential was in default in its rental obligation and that Medspan was entitled to back rent, constituted sufficient notice of Prudential's default. If Medspan is correct, it is entitled to judgment since its letter of July 16, 1981 unambiguously states its intent to terminate the lease.[7]

■ I agree with Prudential that Medspan's complaint was not the notice of default bargained for by the parties and that, therefore, an "event of default" giving rise to Medspan's right of termination under the lease did not occur. What the parties intended as an "event of default" for nonpayment of rent is clearly expressed in the agreement, i.e., a failure to pay rent persisted in for ten days following written notice. By providing a ten-day hiatus between written notice of default and the right to terminate, the parties intended to afford Prudential the opportunity, before resort to judicial process, to cure defaults in its payments.

■ The filing of a complaint does not serve the purpose which the parties intended written notice of default to serve. See *Inman v. Clyde Hall Drilling Company*, 369 P.2d 498, 501 (Alaska 1962).[8] The complaint clearly claims default, but the filing of it does not afford the receiving party the opportunity to cure its default in a non-litigious manner. Instead, the complaint puts the parties and the world on notice that voluntary cure is unlikely and that the parties cannot solve their dispute without resort to the courts. I conclude, therefore, that the filing of the complaint was not the notice of non-payment of rent intended by the parties and that an "event of default" did not occur. Conditions precedent to termination must be strictly observed, see *Wright v. Bristol Patent Leather Company*, 257 Pa. 552, 557, 101 A. 844 (1917). Medspan's attempted termination on July 16, 1981 was ineffectual and did not excuse Medspan's obligation to continue to perform the contract. Since the stipulated facts show that Prudential has cured its rental defaults and appears ready, willing and able to perform, Medspan is not entitled to the relief it seeks in its amended complaint and judgment will be entered in Prudential's favor.

### III. CONCLUSIONS OF LAW

1. Jurisdiction over this action is pursuant to 28 U.S.C. § 1332.

2. Plaintiff, Medspan Shipping Services, Ltd., did not effectively terminate the lease

---

prior demand and without legal process, and for that purpose may enter upon any vessel, dock, pier or other premises and take such steps, as may be necessary to take possession of the same; and thenceforth Medspan shall hold, possess and enjoy the same free from any right of PLI; and Medspan's sole additional right upon the occurrence of an Event of Default shall be to recover from PLI any amounts provided hereunder.

7. In its motion for summary judgment Prudential argued that Medspan's post-termination acceptance of rent indicated that Medspan repudiated the termination. Prudential makes no

mention of this theory in its proposed findings of fact, memorandum of law, and conclusions of law and apparently no longer seeks to avoid termination on that ground. I note further that there is nothing in the stipulated facts which would support a conclusion that Medspan's post-termination conduct was inconsistent with its insistence that it had terminated the lease.

8. Although this case is governed by Pennsylvania law (see Lease ¶ 20), the parties have not cited, and I have been unable to find, any Pennsylvania cases which address the narrow issue in this case.

between it and defendant, Prudential Lines, Inc., on July 16, 1981.

3. The lease between the parties remains in effect.

4. Defendant, Prudential Lines, Inc., is entitled to judgment.

